**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 4:19-CR-1031 AGF(SPM)** |
| | ) | |
| JODY BRISON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION AND**
**MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C.§636(b).

**INTRODUCTION**

Defendant Jody Brison is charged in a three-count indictment with a carjacking and related crimes that occurred November 21, 2019. Shortly after the carjacking, the victim's car was recovered and Brison was arrested. Police presented Brison at a "show up viewing" and the carjacking victim identified Brison as one of two men who took her car at gunpoint. Brison has moved to suppress the out-of-court identification on grounds that its admission at trial would violate the Due Process Clause of the Fifth Amendment because it was both unreliable and the result of an unnecessarily suggestive identification procedure. Although I find the reliability of the victim's identification of Brison questionable, the Eight Circuit has previously held that the type of identification procedure used by police in this case is not unduly suggestive. As such, for the reasons stated below, Brison's motion to suppress identification should be denied.

**PROCEDURAL BACKGROUND**

1

On December 19, 2019, a federal grand jury returned an indictment charging Brison with the offenses listed above. Brison was arrested on January 7, 2020 and appeared for an Initial Appearance on the same day before the Honorable Noelle C. Collins. On January 21, 2020, Brison appeared for an Arraignment. At the Arraignment Brison entered a plea of not guilty to the charges and, through counsel, requested time to review discovery and file any necessary pretrial motions. The undersigned granted the requests through October 14, 2020, finding the requested extensions to be necessary to satisfy the ends of justice.

On October 6, 2020, the Assistant Federal Public Defender who had been representing Brison filed a Motion to Withdraw due to a conflict that had only recently been discovered (Doc. 40). Thereafter, Brison retained Attorney Robert Taaffe, who entered his appearance on October 26, 2020, and subsequently made motions for additional time to file pretrial motions. *See* Docs. 49, 52, 53 & 55. The undersigned granted the requests through December 16, 2020, finding under the circumstances that the requested extensions were necessary to satisfy the ends of justice. *See* Docs. 54 & 56. In compliance with the scheduling orders entered by the undersigned, on December 16, 2020, defense counsel filed a Motion to Suppress Identification (Doc. 57). The United States filed a written response arguing, among other things, that no evidentiary hearing was necessary because none of the material facts were in dispute and the motion could be decided based upon the parties' written submissions. (Doc.  59). Brison filed a Reply opposing the United States' request that the court decide the suppression issue based upon the parties' written submissions (Doc. 63).

After considering the arguments of counsel and the parties' written submissions, the undersigned determined an evidentiary hearing was warranted and, after conferring with the parties, scheduled an evidentiary hearing on Brison's motion to suppress identification on February 8, 2021. However, on February 3, 2021, defense counsel filed a sealed motion requesting that the

hearing be continued (Doc. 69). For the reasons set out in the motion, the undersigned granted the motion and continued the hearing to April 16, 2021, after conferring with the parties (Doc. 71).

On April 16, 2021, the parties appeared for the evidentiary hearing. At the hearing, the United States presented testimony of two witnesses: Diane Myers, the carjacking victim, and St. Louis Metropolitan Police Department ("SLMPD") Officer Deshawn Wilson, who interviewed Ms. Myers on the day of the carjacking. Other than cross examining the United States' witnesses, Brison offered no additional testimony or evidence.

Based on the written submissions of the parties, the arguments of counsel, the evidence presented, and my review of the applicable law, I make the following findings of fact and conclusions of law.

### FACTUAL FINDINGS

For the past twenty-two years, Diane Myers has been a self-employed transporter/deliverer of medicine to hospice and elderly patients who are unable to go pick up medication on their own. On November 21, 2019, at approximately 3:00 p.m., Myers delivered medication to a long-term customer on Kisling Lane in the City of St. Louis. She was returning to her Chevy Equinox when two armed men got out of a parked Chrysler, approached her, threatened to shoot her if she moved, knocked her down, and stole her car. After the men left, Myers returned to the home of her customer and called the police.

The carjacking occurred when it was still daylight and appears to have occurred in a very short timeframe. The men were not wearing masks and were close enough that Myers would have been able to look directly into their faces.

St. Louis Metropolitan Police Department ("SLMPD") Officer Deshawn Wilson, a relatively new police officer at the time, responded to Kisling Lane with his field training officer

(Officer Anderson) around 4:00 p.m. Officers Anderson and Wilson met with Myers who explained what happened and what she observed. Officer Wilson later documented Myers' statement in a written police report.

### A.  Myers' Description of the Suspects

Myers told the police she was robbed at gunpoint by two men, one wearing a white shirt or jacket, and the other wearing a black jacket. Immediately before the carjacking, she saw the men get out of a parked Chrysler. The man wearing the white jacket/shirt got out of the driver's side of the Chrysler and the other man wearing the black jacket got out of the passenger side of the Chrysler. Myers appears to have had more interaction with the man in the white jacket/shirt as he is the person who approached her at her driver's-side door, pointed a semiautomatic handgun in the air and stated, "if you move, we will shoot you." The man in the white jacket/shirt is also the individual who took Myers' keys, pushed Myers down, jumped into her Chevy, and drove away. Myers described this first carjacker as the "older one."[1]

Myers told police the second carjacker got out of the passenger side of the Chrysler, was armed, and was wearing a black jacket. Myers did not provide police with any additional description of the second carjacker. At the suppression hearing, Myers testified that the carjacker in the black jacket initially approached the passenger side of her Chevy but returned to the Chrysler after the man in the white jacket/shirt got Myers' keys. The man in the black jacket then drove the Chrysler out of the area while the man in the white jacket/shirt, driving Myers' Chevy, followed.

---

[1] Myers' description of the suspects at the hearing was a bit of a moving target. She initially testified that the carjacker who got out of the driver's side of the Chrysler and approached her directly was wearing a dark jacket with a white shirt underneath and described him as the "older one." However, Officer Wilson denied that Myers described the two carjackers as the "older one" vs the "younger one" when he first interviewed her. Although Myers initially testified the older man was wearing a white shirt under a dark jacket, she later testified both men wore dark jackets, speculated that maybe one jacket was red, and indicated that both men wore hoodies under their dark jackets.

At the suppression hearing Myers described the man in the black jacket as the "younger one" and testified she didn't "pay too much attention" to this second carjacker.

### B. Recovery of Myers' Chevy and Apprehension of Brison

Myers advised the police her Chevy was equipped with OnStar, which police then used to locate Myers' car and disable the engine. Less than an hour after Myers' report to Officer Wilson, officers responded to the location identified through OnStar and found two men in or near the car. The men ran and were chased by police. One of the men, later identified as Brison, was apprehended. The other man, apparently, got away. At the time of his arrest, Brison was wearing a black jacket. Based on Myers' description of the two carjackers to police, Officer Wilson identified Brison as the second carjacker—the man who exited the passenger side of the Chrysler and who Myers did not pay too much attention to during the carjacking. Although there was no testimony presented on this point, Brison's written submission suggests the man who got away from police was wearing a white jacket. *See* Mtn. to Supp. (Doc. 57), at p. 3.

### C. The Show Up Viewing

Officer Wilson contacted Myers and told her that OnStar had tracked her car and had put an engine block on it that made the car inoperable; that two officers located the car with two subjects around it; that a foot pursuit ensued and they had one person in custody who may be related to the carjacking. Officer Wilson advised Myers police wanted her to identify her car and do a "show up viewing." Myers was then directed to the location where the car had been recovered. After waiting around for over a half hour, Myers was asked to view the suspect to see if she recognized him.

At the time Brison was presented to Myers, there were a lot of officers around, including "higher ups" in white shirts. Myers was advised the suspect would not be able to see her, but she

5

would be able to see him to try to determine if she could identify him as the person who robbed her. Police brought Brison out from a white police van and stood Brison in front of the van. Brison was handcuffed with one officer standing on either side of him. Police then used a Tahoe spotlight to both illuminate and blind Brison. Upon seeing Brison, Myers said "That's f'ing him."

It is unclear whether, at the time she made the identification, Myers specified which of the two carjackers she believed Brison to be. However, at the suppression hearing, Myers testified that when she identified Brison at the "show up" she believed she was identifying the first carjacker— the "older man" wearing the white jacket/shirt who had exited the driver's side of the Chrysler.

## CONCLUSIONS OF LAW

"In our system of justice, fair trial for persons charged with criminal offenses is secured by the Sixth Amendment, which guarantees to defendants the right to counsel, compulsory process to obtain defense witnesses, and the opportunity to cross examine witnesses for the prosecution." *Perry v. New Hampshire,* 565 U.S. 228, 231 (2012). Otherwise, state and federal statutes and rules "ordinarily govern the admissibility of evidence," and juries are tasked with determining the reliability of evidence presented at trial. *Id.* at 237. It is only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice" has the Supreme Court "imposed a constraint tied to the Due Process Clause." *Id.*

Specifically, the Supreme Court has recognized "a due process check on the admission of eyewitness identification" that is triggered when the police "have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Id* at 232. The Supreme Court has applied a two-step analysis in determining whether the Due Process Clause of the Fifth Amendment requires suppression of an eyewitness identification allegedly tainted by police arrangement. *Perry,* 565 U.S. at 238-39; *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). Because due process concerns "arise only when law enforcement officers

6

use an identification procedure that is both suggestive and unnecessary," in the first step of the analysis a defendant must prove the identification procedure used by police was "suggestive and unnecessary." *Perry,* 565 U.S. at 238-39. "When no improper law enforcement activity is involved," reliability is better tested with tools such as "vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 233.

If, however, the identification procedure used by law enforcement was impermissibly suggestive, the court must consider whether the identification was nevertheless reliable despite improper police conduct. *See id.* at 239; *Biggers*, 409 U.S. at 201. Because "[i]t is the likelihood of misidentification which violates a defendant's right to due process," the focus of the due process inquiry is on the reliability of the identification testimony, rather than the suggestiveness of the identification procedure. *Biggers*, 409 U.S. at 198. An identification derived from unnecessarily suggestive procedures will not be excluded if the totality of the circumstances indicates that the identification is reliable. *Manson v. Brathwaite*, 432 U.S. 98, 107, 114-16 (1977).

In determining reliability, courts use the five *Biggers* factors: (1) the witness's opportunity to view the culprit at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's description of the culprit prior to the identification; (4) the witness's level of certainty when identifying the defendant at the confrontations; and (5) the length of time between the crime and confrontation. *Biggers,* 409 U.S. at 199-200; *Manson,* 432 U.S. at 115-16; *United States v. Hadley,* 671 F.2d 1112, 1115-16 (8th Cir. 1982).

### A. The Identification Procedure Was Not Unduly Suggestive.

Based on the foregoing factual findings, the show up identification procedure challenged by Brison was undoubtedly suggestive. Less than an hour after the carjacking, the victim was told by police the suspect had been apprehended in or near her stolen car; the defendant was handcuffed and flanked by two police officers; and police shined a blinding spotlight on the defendant.

However, the Eighth Circuit has previously analyzed similar show up identification procedures and held "[a]bsent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations," *United States v. Pickar*, 616 F.3d 821, 828 (8th Cir. 2010). The Eighth Circuit has also held that "[n]ecessary incidents of these on-the-scene identifications, such as the suspect[] being handcuffed and in police custody, do not render the identification procedure unnecessarily suggestive." *United States v. Martinez,* 462 F.3d 903, 911 (8th Cir.2006). Far from being deemed unnecessary, "quick, on-the-scene" identifications, like the show up procedure used in this case have been sanctioned by the Eighth Circuit as "essential to free innocent suspects and to inform the police if further investigation is necessary." *United States v. King,* 148 F.3d 968, 970 (8th Cir. 1998).

Similar to the identification procedure used in this case, police in *Pickar* used a show up identification procedure in which the defendant, a suspected bank robber, was handcuffed, and placed standing in front of a marked police cruiser, between an officer in uniform and an officer in plainclothes, with one of the officers shining a small flashlight on the defendant's face, while witnesses inside the bank looked through the tinted windows to identify the defendant. *Pickar*, 616 F.3d at 828. The Eighth Circuit held the procedure was not unduly suggestive and compared

it to the show up procedure in *Martinez*, which was ultimately found to be not unduly suggestive. *Id.*

The court in *Pickar* contrasted the show up procedures used in *Pickar* and *Martinez,* with the show up procedures used in *Clark v. Caspari,* 274 F.3d 507 (8th Cir. 2001). The court noted that the defendants in *Clark* were "handcuffed and forced to lie face down on a driveway while an officer with a shotgun stood over them," were "surrounded by white male police officers," and "the witnesses saw one of the defendants being hauled to his feet by an officer." *Pickar,* 616 F.3d at 828. The Eighth Circuit concluded that procedures like those used in *Clark* "were improperly suggestive and increased the possibility of misidentification." *Id.* Because Pickar's show-up identification was "materially less suggestive than in *Clark,*" the Eighth Circuit concluded it fell within the bounds of those "prompt on-the-scene confrontations [that] do not entail due process violations." *Id.*

The show up procedure in this case closely resembles the procedures used in *Pickar* and *Martinez.* Indeed, defense counsel has offered nothing in the way of evidence or argument to suggest that the procedure used in this case went beyond the bounds of the type of routine "prompt on-the-scene confrontation" that has previously been sanctioned by the Eighth Circuit. Because the identification procedure used in this case appears to be entirely consistent with procedures the Eighth Circuit has held are not unduly suggestive, I find defendant has failed to satisfy his burden on the first step of the two-step due process analysis.

### B.  Reliability

The foregoing factual findings suggest that although Myers certainly had an opportunity to view Brison during the carjacking and appeared certain that he was one of the carjackers when she identified him at the showup, Myers may have mistakenly identified Brison as the carjacker who

9

was wearing the white jacket at the time of the crime. Upon seeing Brison at the show up, Myers said "That's f'ing him." However, it is unclear whether, at the time she made the identification, Myers specified which of the two carjackers she believed Brison to be. When asked by the prosecutor at the suppression hearing which of the two carjackers she believed she had identified, Myers testified that she had identified the "older man"—the man wearing the white jacket/shirt who had exited the driver's side of the Chrysler.

This testimony conflicts with testimony by Officer Wilson suggesting that, based on the description of the carjackers Myers gave police, the police believed that Brison—the person apprehended—was the "younger man" who had exited the passenger side of the Chrysler and was wearing a black jacket during the carjacking. This conflict between Myers' description of the carjackers to police and her testimony regarding which of the two carjackers she identified at the show up raises questions about the overall reliability of her identification of Brison. Myers' admission at the hearing that she did not pay too much attention to the second carjacker in the black jacket casts further doubt on the reliability of her out-of-court identification of Brison.

Even though the evidence raises questions about the reliability of Myers' out-of-court identification, Brison's motion to suppress should be denied. "When no improper law enforcement activity is involved," reliability is better tested with tools such as "vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry,* 565 U.S. at 233. Because I find that Brison has failed to demonstrate the show up procedure used in this case was unduly suggestive, the motion to suppress identification should be denied and any questions surrounding the reliability of Myers' out-of-court identification be tested by vigorous cross-examination, protective rules of evidence, appropriate jury instructions,

10

and (if appropriate) determination by the jury. *Id. See also Martinez*, 462 F.3d at 911 ("Whether such factors cast doubt on the accuracy of a positive identification is an issue for the jury.").

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Jody Brison's Motion to Suppress Identification (Doc. 57) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

**IT IS FINALLY ORDERED** that the trial in this matter will be set before the Honorable Audrey G. Fleissig, at a later date.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of May, 2021.

11